# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7584 | **DATE** | 10/24/2002 |
| **CASE TITLE** | Frank A. Baloun, et al. vs. Edward W. Williams, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 11/19/2002 at 9:00 A.M.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion to dismiss [33-1] is granted in part and denied in part. Defendants are directed to answer plaintiffs' remaining claims within 20 days from the date of this Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | OCT 2 5 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | |
| | courtroom deputy's initials | 02 OCT 24 PM 5: 31 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FRANK A. BALOUN, *et al.*.               )
                                         )
      Plaintiffs,                  )
                                         )    Case No. 00 C 7584
      v.                           )
                                         )    Magistrate Judge Nan R. Nolan
EDWARD W. WILLIAMS, *et al.*             )
                                         )
      Defendants.                  )

DOCKETED
OCT 2 5 2002

### MEMORANDUM OPINION AND ORDER

Plaintiff Frank Baloun ("Baloun"), a licensed real estate broker and owner or former owner of the three corporate plaintiffs, brought this lawsuit under 42 U.S.C. § 1983 alleging that ten employees or former employees of the Office of Banks and Real Estate of the State of Illinois (the "OBRE") violated plaintiffs' civil rights by, among other things, summarily suspending their real estate licenses without prior notice and an opportunity to be heard and thereafter pursuing an unfounded year-long investigation into Baloun's business practices. Plaintiffs also brought supplemental state law claims for conspiracy, defamation, and tortious interference. Defendants now move to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons explained below, defendants' motion to dismiss is granted in part and denied in part.

# I. FACTUAL BACKGROUND

Plaintiffs allege the following facts which are taken as true for purposes of ruling on the motion to dismiss. Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 502 (7th Cir. 1998).[1] At all relevant times, Baloun was a licensed real estate broker. Am. Cmplt. ¶ 4. Plaintiff Alliance Downtown Real Estate, Inc. ("Alliance Downtown") is a real estate broker corporation licensed by the OBRE. Id. Baloun was the managing broker and owner of Alliance Downtown. Id. ¶ 6. Baloun was also the managing broker and owner of Plaintiffs Lake Front Realty, Inc. ("Alliance Lincoln Park") and Alliance North Suburban Real Estate Inc. ("Alliance North Suburban"). Id. ¶ 7. Baloun was allegedly forced to sell Alliance Lincoln Park and Alliance North Suburban as a result of defendants' unlawful actions. Id. ¶ 7 fn.1.

All of the defendants were employees of the OBRE during the relevant time period. Id. ¶ 19. The OBRE is an agency of the State of Illinois which, among other things, issues real estate

---

[1] Defendants attached to their motion to dismiss the OBRE's administrative complaint, the petition for summary suspension, the order of summary suspension, the order of the Circuit Court of Cook County, Illinois staying the order of summary suspension, and the order of reinstatement. Defendants argue that the Court may take judicial notice of the decision of another court or agency. As explained in Opoka v. Immigration and Naturalization Service, 94 F.3d 392, 395 (7th Cir. 1996), a court may generally take judicial notice of another court or agency's decision or of a document filed in another matter only for the limited purpose of recognizing the fact of such litigation or judicial act, not for the truth of the matters asserted in the other litigation. See also General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1082 fn.6 (stating "We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed.").

The Court declines to rely on the facts cited in the exhibits attached to defendants' current motion because defendants have failed to satisfy the indisputability requirement of Fed. R. Evid. 201(b). The Court merely takes judicial notice of facts that are not subject to reasonable dispute and capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. General Electric Capital Corp., 128 F.3d at 1081. For instance, the Court takes judicial notice of the fact that the Commissioner of the OBRE issued an order of summary suspension on December 29, 1998 and made certain findings therein. The Court does not, however, take judicial notice of the findings made by the Commissioner for the truth of the matters asserted.

broker licenses and regulates these licenses. Id. ¶ 19. Defendants held the following positions at OBRE: 1) Edward Williams ("Williams") - Chief of Prosecutions in the Real Estate Division; 2) Ronald J. Zito ("Zito") - Investigator; 3) Donald Potter ("Potter") - Investigator; 4) Dale Turner ("Turner") - General Counsel; 5) Jack Shaffer ("Shaffer") - Commissioner of OBRE before January 1999; 6) William Darr ("Darr") - Commissioner of OBRE after approximately January 1999; 7) Eli Sidwell ("Sidwell") - Director of Real Estate; 8) Chris McAuliffe ("McAuliffe") - Assistant Commissioner of OBRE before spring 1999; 9) Patrick Brady ("Brady") - Assistant Commissioner of OBRE after spring 1999; 10) Carlo DeFranco ("DeFranco") - Supervisor of Investigations. Id. ¶¶ 9-18.

Prior to December 1998, Baloun had received no complaints by OBRE representatives concerning his three real estate broker offices. Id. ¶ 20. In December of 1998, Baloun and Zito met at one of Baloun's offices. Id. ¶ 22. Baloun learned that Zito planned to meet with one of Baloun's agents named Bernstein. Id. According to plaintiffs, Zito attempted to force Bernstein to admit to improper conduct as a real estate agent. Id. Zito also allegedly attempted to prohibit Baloun from meeting with and participating in Zito's conference with Bernstein. Id. Plaintiffs further allege that Zito threatened Baloun by stating, "Unless he [Bernstein] signs this, and agrees not to contest discipline, I'm coming after you." Id. ¶ 23. In accordance with Baloun's advice, Bernstein refused to sign the allegedly false statement. Id.

Within days after Zito and Baloun's initial meeting, Zito and Potter began to attempt "to get" Baloun by conducting audits and threatening to falsely report that Baloun refused to produce records, refused to cooperate, or otherwise was in violation of his duties as a licensed real estate broker. Id. ¶ 24. Baloun informed Zito and Potter on numerous occasions that he would fully cooperate with their investigation after hiring legal counsel. Id. ¶ 26. Williams

aided and advised Zito and Potter in their investigation by contacting colleagues and employees of Baloun as well as representatives of the franchiser who issued the real estate franchisees to Baloun and accusing Baloun of illegal business practices, crimes of moral turpitude, and engaging in check kiting. Id. ¶ 25. Williams made false allegations concerning Baloun and assisted Zito and Potter in filing false statements during their investigation of plaintiffs. Id. ¶ 32. The above actions by Zito, Potter, and Williams continued through January, 2000. Id. ¶ 27. Baloun complained to Shaffer, Darr, Brady, Tuner, Sidwell, McAuliffe, and Williams, all of whom were supervisors at the OBRE, concerning the actions of Zito, Potter, and Williams. Id. ¶ 28. Plaintiffs allege that Shaffer, Darr, Brady, Turner, Sidwell, McAuliffe had a duty to supervise, instruct, train, control, and discipline Zito, Potter, and Williams but failed to do so. Id. ¶¶ 29, 30.

Prior to suspending plaintiffs' real estate brokerage licenses, the OBRE filed a complaint and a petition for summary suspension. Defs' Memo. Exhs. A, B. The complaint alleged, among other things, that an audit of the escrow records of the Alliance Downtown offices revealed a shortage of approximately $21,365 and an additional variance of approximately $87,518 and that Baloun failed to produce certain requested escrow records and related documents. Defs' Memo. Exh. A. The petition for summary suspension stated that given the alleged shortages and variances, plaintiffs' failure to produce all of the requested escrow records presented "a grave risk that substantial, additional shortages" may exist requiring emergency action. Defs' Memo. Exh. B. Plaintiffs allege that the petition for summary suspension was based on false statements by Zito, Potter, and Williams. Am. Cmplt. ¶ 33.

On December 29, 1998, Baloun's real estate brokerage license was summarily suspended without prior notice and an opportunity to respond. Am. Cmplt. ¶¶ 33, 52; Defs' Memo. Exh. C.

The next day, Zito served Baloun with the order of summary suspension which suspended Baloun's personal real estate broker's licenses and all corporate licenses. Am. Cmplt. ¶ 48. On December 31, 1998, plaintiffs filed for and were granted a temporary restraining order staying the summary suspension of plaintiffs' real estate license until January 5, 1999. Defs' Memo. Exh. D. On January 11, 1999, the OBRE restored plaintiffs' licenses to active status. Defs' Memo. Exh. E.

After plaintiffs' licenses were restored to active status, defendants continued to investigate plaintiffs and filed two additional complaints with the OBRE containing twelve counts. Am. Cmplt. ¶ 82(g). On November 9, 1999, Williams withdrew six of the counts pending against plaintiffs. Am. Cmplt. ¶ 82(g) fn.1. On February 1, 2000, Williams and Baloun entered into a consent order in which Baloun was reprimanded and all remaining counts against Baloun were withdrawn. Id. On February 7, 2000, Williams withdrew all counts remaining against the corporate plaintiffs. Id. After a more than a year-long investigation of plaintiffs, defendants admitted that they had no evidence to support the allegations concerning plaintiffs and abandoned all of the allegations. Am. Cmplt. ¶ 36. Baloun was allegedly forced to sell two of his franchises at a significant loss because of defendants' actions. Am. Cmplt. ¶ 35.

## II. DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. Gibson v. Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction, the court takes as true all factual allegations in the plaintiff's complaint and draws

all reasonable inferences in his favor. <u>Komorowski v. Townline Mini-Mart & Restaurant</u>, 162 F.3d 962, 964 (7th Cir. 1998 (per curiam); <u>Fredrick v. Simmons Airlines, Inc.</u>, 144 F.3d 500, 502 (7th Cir. 1998). "[D]ocuments attached to a motion to dismiss [for failure to state a claim] are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." <u>Wright v. Assoc. Ins. Cos. Inc.</u>, 29 F.3d 1244, 1248 (7th Cir.1994). Moreover, where dismissal is sought on the ground of lack of jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." <u>Long v. Shorebank Development Corp.</u>, 182 F.3d 548, 554 (7th Cir. 1999).

Plaintiffs' amended complaint contains six counts: (1) violations of 42 U.S.C. § 1983 procedural due process, equal protection, and first amendment rights, (2) "violations of 42 U.S.C. § 1983 based on supervisors liability of Shaffer, Turner, McAuliffe, Sidwell, Williams and DeFranco or Darr and Brady, sued in their individual capacities," (3) civil conspiracy - state law claim; (4) defamation; and (5) two counts of tortious interference with business. Defendants raise numerous arguments in support of their motion to dismiss the entire amended complaint with prejudice. The Court will address each of defendants' arguments in turn.

## A.    **Federal Claims**

### 1.    **Procedural Due Process**

Plaintiffs' allegations that the procedures utilized violated due process can be classified into the following three categories: (1) plaintiffs challenge the temporary suspension of their real estate licenses without prior notice and an opportunity to respond; (2) plaintiffs challenge defendants' failure thereafter to hold prompt hearings on the OBRE complaints; and (3)

plaintiffs challenge defendants' unfounded year-long investigation of plaintiffs designed to harass and retaliate against plaintiffs.[2] Defendants' motion only addresses the first due process claim.[3] See Defs' Memo., pp. 4-12. Defendants argue in part that this procedural due process claim should be dismissed because (1) it fails to allege that any violation occurred as a result of anything but a random and unauthorized act and not any established state procedure and (2) fails to allege that plaintiffs did not have adequate state remedies.

Procedural due process claims require a two-step analysis. Porter v. DiBlasio, 93 F.3d 301, 305 (7th Cir. 1996). First, the court considers whether the plaintiffs were deprived of a constitutionally protected interest. Id. The second step requires a determination of what process was due with respect to that deprivation. Id. Defendants do not dispute that plaintiffs possessed property interests in their real estate broker's licenses. Baloun also had a liberty interest in pursuing his profession as a realtor. See Becker v. Illinois Real Estate Admin. and Disciplinary Bd., 884 F.2d 955 (7th Cir. 1989). Defendants focus on the second part of the due process analysis: whether plaintiffs received all the process that was due to them.

Due process is a flexible concept which requires different procedural protections depending on the factual circumstances of each case. Zinermon v. Burch, 494 U.S. 113, 127 (1990). As a general rule, the constitution requires some type of a hearing prior to the deprivation of liberty or property by government actors. Id. Under certain circumstances, "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous

---

[2] "Clearly, an unwarranted investigation by licensing officials conducted in a manner calculated to discourage customers or interfere with a licensee's business may violate a property right." Easter House v. Felder, 910 F.2d 1387, 1407 (7th Cir. 1990).

[3] Defendants challenge plaintiffs other due process claims for the first time in their reply brief. The Court will not address arguments raised for the first time in a reply brief. Aliwoli v. Gilmore, 127 F.3d 632, 635 (7th Cir.1997) (holding party may not assert new argument in reply brief).

deprivation, satisfies due process." Id. at 128; Lolling v. Patterson, 966 F.2d 230, 234 (7th Cir. 1992) (holding "deprivations of property which occur without a predeprivation hearing do not violate due process so long as the state provides a meaningful postdeprivation remedy."). "The Supreme Court has recognized that the practical exigencies of a situation may often counsel against affording plenary pre-deprivation process to an individual." Doyle v. Camelot Care Centers, Inc., 2002 WL1992496 (7th Cir. 2002). An "important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard." Fed. Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 240 (1988). "The constitutionality of such schemes, however, frequently turns on the availability of sufficiently prompt post-deprivation hearings." Doyle v. Camelot Care Centers, Inc., 2002 WL1992496 (7th Cir. 2002).

Although the parties appear confused on this issue, the amended complaint seems to allege two types of procedural due process claims with respect to the temporary suspension. Plaintiffs' first claim challenges the adequacy of the State's established procedure of not providing notice and some type of a hearing prior to a summary suspension of real estate licenses. Plaintiffs' second claim seems to challenge the OBRE officials' alleged misconduct in securing a temporary deprivation of plaintiffs' licenses.

To the extent that plaintiffs are challenging the State's failure to provide notice and an opportunity to respond prior to a temporary suspension in cases evidencing a danger to the public interest, safety, and welfare, plaintiffs state a viable due process claim. Defendants point out that the Illinois Real Estate License Act of 2000 (the "Real Estate License Act" or the "Act") provides that the Commissioner may temporarily suspend the license of a licensee without a hearing in certain limited circumstances. The Real Estate License Act states: "The

Commissioner may temporarily suspend the license of a licensee without a hearing, simultaneously with the institution of proceedings for a hearing provided for in Section 20-60 of this Act, if the Commissioner finds that the evidence indicates that the public interest, safety, or welfare imperatively requires emergency action." 225 ILCS 454/20-65. The Act further provides that if the Commissioner temporarily suspends a license without a hearing before the Board, a hearing must be held within 30 days after the suspension occurred, unless the suspended licensee seeks a continuance of the hearing. Id. The Illinois Administrative Procedure Act, which the Real Estate License Act expressly adopts and incorporates with one limited exception, provides that no agency shall suspend any valid license without first giving written notice to the licensee and an opportunity to be heard except that if "the agency finds that the public interest, safety, or welfare imperatively requires emergency action . . . summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined. 5 ILCS 100/10-65; 225 ILCS 454/20-55.

To determine the sufficiency of the process due plaintiffs prior to temporarily suspending their real estate licenses, the Court must balance the following three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

In this case, the Court cannot conclude at the motion to dismiss stage that plaintiffs were afforded all the process they were due in relation to the temporary suspension of their real estate

licenses. As to the first Mathews factor, the Court has no difficulty concluding that plaintiffs have a substantial interest in maintaining their real estate licenses. Becker, 884 F.2d at 958 (holding plaintiff's interest in obtaining a real estate license is "obviously substantial" given the time and money invested). Plaintiffs allege that the temporary suspension of their real estate licenses resulted in the termination of all of Baloun's real estate listings, his real estate agents quitting and finding other employment, a restriction on his ability to represent buyers, and a breach of his franchise agreements with RE/MAX. Am. Cmplt. ¶ 48. Although the deprivation of plaintiffs' licenses was temporary in nature, it clearly affected Baloun's important interest in maintaining his livelihood. Second, the risk of an erroneous deprivation of plaintiffs' real estate licenses through the procedures used is not nonexistent where the plaintiffs were not provided with notice of the petition for summary suspension and an opportunity to respond to the charges before the temporary suspension was ordered. Plaintiffs may be able to show that the risk of error is great enough to warrant the additional safeguards of pre-suspension notice and an opportunity to respond.

Neither the amended complaint nor the motion to dismiss address the fiscal or administrative burdens that additional safeguards would entail under these circumstances. The Court has no way of determining at this early state in the litigation the costs of pre-suspension notice and a hearing. Moreover, the probative value of additional procedures is great under the circumstances alleged. Plaintiffs have a substantial interest in notice and some opportunity to respond or tell their side of the story to an impartial agency decision-maker prior to the temporary suspension of their real estate licenses. Given the merger record, the Court cannot conclude that additional procedures would not reduce the chances that defendants would erroneously suspend plaintiffs' licenses. Finally, the State's interest in protecting the integrity of

public real estate transactions and ensuring that escrow monies are properly held by those persons and entities that it licenses is clearly substantial. The State also has a significant interest in acting quickly where the evidence indicates that the public interest, safety, or welfare requires emergency action.

Balancing the Mathews factors in light of the facts pleaded, the Court finds that due process may have required the State to provide some pre-suspension notice and opportunity to be heard. Facts not in the complaint may change this analysis, but the Court cannot find that "it appears beyond doubt" that plaintiffs cannot prove any facts that would support a procedural due process challenge to the State's procedures concerning temporary suspension. Thus, at this initial pleading stage, the Court concludes that the complaint adequately states a procedural due process claim based on the pre-deprivation procedures afforded.

The Court concludes, however, that plaintiffs have not plead sufficient facts to demonstrate that the OBRE officials in this case acted in anything other than a "random and unauthorized" fashion in securing the temporary suspension of plaintiffs' real estate licenses. A predeprivation hearing is impracticable when the state officials acted in a "random and unauthorized" fashion, rather than pursuant to an established state procedure. "[W]hen deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." Hudson v. Palmer, 468 U.S. 517, 533 (1984). The Supreme court has also applied the rationale of the rule regarding random and unauthorized takings of property to liberty deprivations. See Zinermon, 494 U.S. at 132. Whether a defendant's conduct is "random and unauthorized," as opposed to "predictable and authorized," is a question of law

appropriate for resolution at the 12(b)(6) stage. Hamlin v. Vaudenberg, 95 F.3d 580, 584 n. 2 (7th Cir. 1996).

Plaintiffs state in their response that defendants' actions were not random and unauthorized. Plaintiffs' amended complaint, however, fails to allege anything other than random and unauthorized acts causing the temporary loss of property and liberty. Defendants' alleged conduct was random and not predictable from the point of view of the State. Defendants exercise a certain degree of discretion in investigating charges and bringing petitions for temporary suspension but that discretion does not include pursuing personal vendettas against licensees by filing knowingly false charges. The State cannot predict precisely when its employees will pursue personal vendettas against licensees. Hudson, 468 U.S. at 521 n. 2.

Defendants' alleged actions were also not authorized. Plaintiffs' amended complaint repeatedly states that the OBRE officials acted unlawfully, illegally, and maliciously by harassing and retaliating against Baloun. Am. Cmplt ¶¶ 33, 37, 41, 45, 58, 59. Plaintiffs allege that Zito and Potter were unlawfully and maliciously attempting "to get" Baloun. Am. Cmplt. ¶¶ 24, 40. Plaintiffs further allege that summary suspension was based on unlawful, knowingly false, and malicious statements by Zito, Potter, and Williams concerning Baloun's escrow accounts. Am. Cmplt. ¶¶ 33, 45, 46, 57.

Plaintiffs have not identified any state procedure which authorizes employees of the OBRE to unlawfully harass and retaliate against real estate license holders by, among other things, filing and pursing knowingly false charges. While state officials were obviously authorized to use the state procedure to investigate alleged escrow account violations, they were not authorized to harass Baloun by pursing charges they knew were false. The alleged unlawful actions of the OBRE employees cannot be said to have been made pursuant to an established

-12-

state procedure. In fact, plaintiffs explicitly allege that defendants failed to follow established state procedures regarding OBRE investigations and prosecutions. Am. Cmplt. ¶ 81(f). The State could not have known of the unlawful conduct so as to be in a position to provide plaintiffs with notice and a hearing to address whether the OBRE officials should engage in the alleged misconduct prior to the summary suspension of their real estate licenses. Zinermon, 494 U.S. at 137.

Because plaintiffs were only entitled to postdeprivation remedies for the defendants' alleged misconduct, it is necessary to determine whether the post-deprivation remedies available under state law are adequate. In Easter House v. Felder, 910 F.2d 1387, 1406 (7th Cir.1990) (en banc), the court of appeals applied the rule regarding random and unauthorized takings in holding that Illinois tort law provided an adequate post-deprivation remedy to a private adoption agency which alleged that state officials had conspired to harass it and to deprive it of its property interest in renewing its operating license. The court concluded that Illinois law provided due process because it recognized a number of tort actions under which the plaintiff could have sought damages for its deprivations of property. Id. at 1405. A post-deprivation remedy is inadequate only if it "is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the [F]ourteenth [A]mendment." Id at 1406.

Plaintiffs had adequate post-deprivation state law remedies and thus, have not stated a claim for a denial of procedural due process. In fact, plaintiffs successfully availed themselves of certain state law remedies and have not demonstrated that these remedies and the other available remedies are inadequate. Plaintiffs admit that the temporary suspension was rescinded through state proceedings. The day after plaintiffs were served with the summary suspension they moved the circuit court for injunctive relief and received a temporary restraining order

staying the summary suspension order until January 5, 1999. On January 11, 1999, the OBRE restored Plaintiffs' licenses to active status. Although the current record is unclear concerning whether the status of plaintiffs' licenses between January 6 and January 10, it is reasonable to assume that plaintiffs could have moved the circuit court for an order further staying the summary suspension, and plaintiffs have not argued otherwise.

Moreover, Plaintiffs have several state tort causes of action which provided meaningful postdeprivation remedies sufficient to satisfy due process. For example, "under Illinois law, an injured party may bring an action if a third party interferes with the injured party's contractual relationship or if it 'tortiously interferes' with the injured party's 'prospective economic advantage.'" Easter House, 910 F.2d at 1405. Plaintiffs' amended complaint in fact alleges tortious interference with business, defamation, and a state law conspiracy claim. The Court concludes that Illinois post-deprivation remedies are adequate to redress any injuries plaintiffs claim to have sustained as a result of the defendants' alleged misconduct in temporarily suspending their real estate licenses.

## 2. Equal Protection

Defendants argue that plaintiffs fail to state an equal protection claim because plaintiffs do not allege that they are members of a protected class. A classic equal protection claim alleges, among other things, membership in a protected class. Plaintiffs do not claim that they were treated differently because of membership in any class but rather proceed under a "class of one" equal protection claim recognized by the Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000). The Supreme Court held that an individual may state a "class of one" equal protection claim if he alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at

564. The amended complaint alleges that defendants treated Baloun "differently from other similarly situated persons without any compelling state interest thereby denying Baloun equal protection under the law." Am. Cmplt. ¶ 63. Baloun's allegations sufficiently state a claim of a violation of Baloun's right to equal protection.

The Seventh Circuit has also held that "an individual may state a claim under the equal protection clause if he can show that state government took an action that 'was a spiteful effort to 'get' him for reason wholly unrelated to any legitimate state objective.'" Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). Plaintiffs allege that Zito and Potter were out "to get" Baloun in retaliation for his advice to Bernstein. Am. Cmplt ¶¶ 24, 40. The Court can reasonably infer from the allegations of the amended complaint that ill will was the sole cause of the complained-of actions. Albiero, 246 F.3d at 932. The amended complaint also alleges that the defendants' actions were "without any compelling state interest." Am. Cmplt. ¶ 63. Defendants' contention that the activities of Zito and Potter in auditing Baloun's escrow account were clearly related to a legitimate government interest is not supported by the allegations of the amended complaint which the Court must accept as true at this stage of the proceedings. Thus, plaintiffs' allegations also state a claim under a "totally illegitimate animus" equal protection theory.

### 3. First Amendment

Defendants state in one sentence in their motion to dismiss that "Plaintiffs' first amendment claim fails to state a claim upon which relief can be granted," but their memorandum fails to discuss plaintiffs' first amendment claim. Not surprisingly, plaintiffs' response did not address defendants' unsupported request to dismiss the first amendment claim. For the first time in their reply brief, defendants provide an analysis supporting their argument that plaintiffs fail

to state a first amendment claim. It is s too late to develop an argument for the first time in a reply brief. See Aliwoli, 127 F.3d at 635 (holding party may not assert new argument in reply brief). Because plaintiffs have not had a fair opportunity to respond to defendants' first amendment argument, the motion to dismiss is denied in this respect.

### 4. **Quasi-Judicial Immunity**

Defendants next argue that all of plaintiffs' claims against Commissioner Shaffer and General Counsel Turner are barred by the doctrine of absolute quasi-judicial immunity. As defendants correctly state, judicial immunity protects judges from a suit for civil damages when performing judicial functions, and the relevant analysis is based upon the nature of the functions the judge was performing. Forrester v. White, 484 U.S. 219, 224 (1988). The Supreme Court has extended absolute immunity to federal administrative law judges. Butz v. Economou, 438 U.S. 478 (1978). Defendants bear the burden of demonstrating that absolute immunity is justified for the actions in question. Forrester, 484 U.S. at 224.

In their memorandum, defendants merely summarize the general law on judicial immunity in two short paragraphs. Then, with no analysis whatsoever of how the law applies to the allegations in this case and the functions at issue, defendants conclude that Commissioner Shaffer and General Counsel Turner are entitled to absolute quasi-judicial immunity. Defendants' undeveloped argument is waived for purposes of the motion to dismiss. United States v. South, 28 F.3d 619, 629 (7th Cir. 1994) (noting that "perfunctory and undeveloped arguments" are waived). "'Ours is an adversary system', and it is up to the party seeking relief to sufficiently develop his arguments." Id. (quoting United States v. Seacott, 15 F.3d 1380, 1390 (7th Cir. 1994) (Easterbrook, J., concurring)). If they desire to do so, Shaffer and Turner may

present a properly supported argument for absolute quasi-judicial immunity at the summary judgment stage.

Even if the defendants had presented a properly supported argument, the Court would reject their argument with respect to certain of the allegations in this case. Plaintiffs' allegations are based in part on Shaffer's and Turner's failure to train, supervise, and discipline defendants Zito, Potter, and Williams. The training, supervising, and disciplining of Zito, Potter, and Williams are administrative functions, not judicial functions. The doctrine of absolute judicial immunity does not shield judges from civil damages for administrative decisions. Forrester, 484 U.S. at 229 (holding that judge's decision to fire probation officer was administrative not judicial in nature and not entitled to absolute immunity). At the pleading stage, plaintiffs' allegations against Shaffer and Turner based on a failure to train, supervise, and discipline are sufficient to defeat dismissal based on absolute quasi-judicial immunity.

## 5.    **Prosecutorial Immunity**

Defendants similarly contend that certain actions taken by defendants Williams, Turner Shaffer, McAuliffe, Darr and Brady are protected from suit by the doctrine of prosecutorial immunity. It is well settled that prosecutors are absolutely immune from liability under § 1983 for "initiating a prosecution and ... presenting the State's case" as long as their conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). The Seventh Circuit has also held that absolute immunity shields a prosecutor if he "initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." Henry v. Farmer City State Bank, 808 F.2d 1228, 1238 (7th Cir. 1986). Prosecutors are not, however, absolutely immune from liability for their "administrative duties and those investigatory functions that do not relate to an advocate's

preparation for the initiation of a prosecution or for judicial proceedings." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

Defendants argue that plaintiffs' claims based on defendants Williams, Turner, Shaffer, McAufliffe, Darr and Brady's actions in filing a complaint with the OBRE, petitioning for summary suspension of plaintiffs' licenses, failing to provide plaintiffs with notice of the request for summary suspension, and investigating the facts in this case are all actions taken in connection with initiating and prosecuting the case before the OBRE. The Court agrees that the acts of filing a complaint with the OBRE, petitioning for summary suspension, and failing to provide notice of the request for summary suspension are not investigative in function but rather clearly constitute acts toward initiating a prosecution. Plaintiffs' claims against Williams, Turner, Shaffer, McAufliffe, Darr and Brady, however, appear to be based mainly on their failure to train, supervise, control, and discipline Zito, Potter, and Williams. The training and supervision of Zito, Potter, and Williams is an administrative function, and therefore, plaintiffs' claims against Williams, Turner, Shaffer, McAufliffe, Darr, and Brady based on failure to train and supervise are not barred by absolute prosecutorial immunity.

Defendants also contend that prosecutorial immunity shields Williams, Turner, Shaffer, McAufliffe, Darr and Brady's actions in investigating the facts in this case. The relevant inquiry in determining whether a prosecutor is entitled to absolute immunity is whether the prosecutor is acting as an advocate in performing the task for which he is sued. Anderson v. Simon, 217 F.3d 472, 475 (7th Cir. 2000). In a criminal case, the role of advocate normally begins on arrest because "'[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.'" Id. (quoting Buckley v. Fitzsimmons, 509 U.S. 259

-18-

(1993)). "Nonetheless, probable cause to arrest does not immunize a prosecutor for all activities performed following the arrest, if these activities are investigative in nature." Id.

In this case, the amended complaint does not allege that defendants Turner, Shaffer, McAufliffe, Darr and Brady engaged in investigatory conduct. With respect to Williams, plaintiffs generally allege that Williams' actions were investigative in nature and not in furtherance of the prosecution. The relevant question is what alleged specific acts of Williams form the basis of his alleged liability to plaintiffs. The amended complaint alleges that Williams helped Zito and Potter in their investigation of plaintiffs. Am. Cmplt. ¶ 25. Plaintiffs allege that Williams contacted RE/MAX as part of the investigation of plaintiffs while no complaint was pending. Id. ¶¶ 25, 58(a). The amended complaint further alleges that Williams made false allegations regarding Baloun's escrow accounts in support of the petition for summary suspension and assisted Zito and Potter in filing false statements during their investigation. Id. ¶¶ 32, 57. The amended complaint states that prior to the summary suspension, Williams "personally conducted or participated in an investigation of Baloun." Id. ¶ 54. Construing these allegations in the light most favorable to plaintiffs, it can reasonably be inferred that Williams investigated plaintiffs in preparation for filing the complaint with the OBRE (the administrative equivalent of an arrest). Given the limited record before the Court, the Court determines that Williams is not entitled to absolute immunity for at least part of the investigation plaintiffs condemn. Defendants' motion to dismiss is denied with respect to this issue.

Finally, plaintiffs allege that Williams made defamatory statements about Baloun to RE/MAX. Am. Cmplt. ¶¶ 90, 91. Williams is not absolutely immune from suit for allegedly defamatory statements he made to RE/MAX. Buckley, 509 U.S. at 277-78 (holding prosecutor not entitled to absolute immunity for out-of-court statements to the press).

## 6.    Intracorporate Conspiracy Doctrine

Defendants further contend that the conspiracy claim against them under § 1985(3) is barred by the intracorporate conspiracy doctrine.    Defendants argue that all of the Defendants named in the amended complaint were employees and agents of the OBRE and cannot be considered conspirators.    Under the intracorporate conspiracy doctrine, "a conspiracy cannot exist solely between members of the same entity."  Payton v. Rush-Presbyterean-St. Luke's Med. Ctr., 184 F.3d 623, 632 (7th Cir. 1999).  The Seventh Circuit has held that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory."  Travis v. Gary Community Mental Health Center, Inc., 921 F.2d 108, 110 (7th Cir. 1990).  This doctrine has been applied to officials working within a government agency as well as private corporations. Wright v. Ill. Dep't of Children and Family Services, 40 F.3d 1492, 1508 (7th Cir. 1994).

The Seventh Circuit has recognized two exceptions to the intracorporate conspiracy doctrine.  One exception applies where the employees are shown to have been motivated solely by personal bias.  Hartman v. Board of Trustees of Community College Dist. No. 508, 4 F.3d 465, 470 (7th Cir. 1993).  "In that case, the interests of the corporation would have played no part in the employees' collective action, so the action could not have been taken within the scope of employment."  Id.  Here, the allegations reasonably support a conclusion that defendants were motivated solely by a personal interest, rather than the interests of the OBRE.  Plaintiffs allege that defendants Zito and Potter were motivated by a personal desire to "get" Baloun because Baloun advised Bernstein not to sign a false statement sought by Zito.  Plaintiffs further allege that the defendants conspired to destroy Baloun and his businesses.  It can reasonably be inferred

from these allegations that defendants were motivated by personal motives unconnected to the OBRE's official business.

Second, the Seventh Circuit has recognized that the intracorporate conspiracy doctrine does not apply where "the conspiracy was part of some broader discriminatory pattern." Hartman, 4 F.3d at 470-71. The Seventh Circuit has not defined the "broader discriminatory pattern" exception but has identified relevant factors as the number of agents involved and the nature and scope of the conspiracy. Jefferson v. City of Harvey, 2000 WL 15097, *5 (N.D. Ill. Jan. 5, 2000). In the instant case, the amended complaint alleges a conspiracy involving ten OBRE employees involving numerous acts over a period of one year. These allegations are sufficient to avoid the intracorporate conspiracy bar at this stage of the proceedings. Id. (holding conspiracy allegations involving numerous officers over a significant time span survived motion to dismiss).

### 7. Statute of Limitations

Defendants argue that plaintiffs' claims under § 1983 against defendants Darr and Brady are barred as the actions complained of are outside the applicable statute of limitations period. Because Section 1983 does not contain an express statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury claims. Wilson v. Garcia, 471 U.S. 261, 276 (1985). In Illinois, the applicable statute of limitations period for § 1983 actions is two years. Booker v. Ward, 94 F.3d 1052, 1056 (7th Cir. 1996). Plaintiffs named Darr and Brady as defendants for the first time in their amended complaint filed on August 31, 2001. Plaintiffs did not respond to defendants' request that the court dismiss claims against Darr and Brady which fall outside the two year statute of limitations period and thus, apparently concede this point.

Defendants' motion to dismiss claims against Darr and Brady based on actions occurring before August 31, 1999 is granted.

**B.    State Law Claims**

Plaintiffs' amended complaint includes state law claims for conspiracy, defamation, and tortious interference with business. Defendants argue that Plaintiffs' state law claims are barred by sovereign, public official, and absolute immunity. Defendants also argue that plaintiffs fail to state a claim for civil conspiracy, defamation, and tortious interference. As explained below, the Court agrees in part and disagrees in part.

**1.    Sovereign Immunity**

State law rules of sovereign immunity govern state law causes of action in federal court. Magdziak v. Byrd, 96 F.3d 1045, 1048 (7th Cir. 1996). Except as provided in the Illinois Court of Claims Act, 705 ILCS 505/8, the State of Illinois is immune from suit in any court. Richman v. Sheahan, 270 F.3d 430, 441 (7th Cir. 2001). The Illinois Court of Claims has exclusive jurisdiction over [a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation thereunder by an executive or administrative officer or agency . . ." and "[a]ll claims . . . for damages sounding in tort . . . ." 705 ILCS 505/8(a), (d). A claim is against the state when: "'there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.'" Healy v. Vaupel, 549 N.E.2d 1240, 1247 (Ill. 1990) (quoting Robb v. Sutton, 498 N.E.2d 267, 272 (1986)).

In this case, plaintiffs' state law claims are based on the same factual allegations contained in the Section 1983 claims. Defendants allegedly conspired to harass, coerce, intimidate, and destroy Baloun and his businesses through various means. Plaintiffs also allege that Zito, Potter, and Williams knowingly made false statements and allegations about Baloun. Williams allegedly interfered with Baloun's contractual relationships with RE/MAX and various real estate agents. Plaintiffs' amended complaint alleges that Zito, Potter, and Williams acted illegally and unlawfully harassed and retaliated against Baloun by filing and pursing false charges. Zito's and Potter's actions were allegedly motivated by a desire to "get" Baloun. The amended complaint also alleges that the remaining defendants knew or should have known of the unlawful acts by Zito, Potter, and Williams. These allegations survive defendants' motion to dismiss because plaintiffs allege that defendants acted outside the scope of their authority and in violation of state law. See Busch v. Bates, 753 N.E.2d 1184, 1190-91 (Ill. App. 2001) (holding trial court properly exercised jurisdiction over plaintiff's case where amended complaint alleged that the defendants "maliciously, unlawfully[,] and wrongfully conspired together[] and with others * * * to compose, publish[,], and utter false and malicious statements[] concerning plaintiff's reputation, credibility, integrity, and ability as a crime scene technician [] and thereby injure[d] and damage[d] plaintiff.").

## 2. Public Official Immunity

Defendants also contend that they are protected from liability under the doctrine of public officials' immunity. The common law doctrine of public officials' immunity provides that public officials are not subject to personal liability for their performance of discretionary duties. Currie v. Lao, 592 N.E.2d 977, 983-84 (Ill. 1992). "The doctrine is premised upon the principle that a public decisionmaker should not be subject to personal liability where he makes a decision

-23-

based upon his perception of the public needs." Id. at 984. As defendants acknowledge, public official immunity is conditioned upon the good faith exercise of discretion. Rossi v. Bower, 2002 WL 1160151, *9 (N.D. Ill. May 29, 2002); Bell v. Irwin, 2001 WL 1803645, *5-6 (S.D. Ill. May 30, 2001). Thus, the doctrine applies only in situations where there are no allegations of bad faith. In the present case, plaintiffs claim the defendants unlawfully, illegally, and maliciously harassed and retaliated against Baloun. If true, these allegations demonstrate that defendants' actions were not taken in good faith. Accordingly, the Court cannot dismiss plaintiffs' state law claims based on public officials' immunity at this time.

### 3. Absolute Immunity

Next, the Court addresses whether common law absolute immunity precludes plaintiffs' state law claims. Defendants argue that Williams' alleged defamatory statements are barred since Illinois law has an absolute privilege against defamation for government officials for statements made within the scope of their official duties. The rationale for this privilege is ensuring that government officials are:

> free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties–suites which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

Barr v. Matteo, 360 U.S. 564, 571 (1959). Absolute immunity has been applied to virtually every common law tort including, but not limited to, malicious prosecution, tortious interference with business, false arrest, blackmail, fraud, intimidation, and invasion of privacy claims. Morton v. Hartigan, 495 N.E.2d 1159, 1165 (Ill. App. 1986). "An absolute privilege cannot be overcome by a showing of improper motivation or knowledge of falsity." Geick v. Kay, 603 N.E.2d 121, 127 (Ill.App. 1992). The absolute immunity doctrine is limited to situations in

which the government official's action is within the scope of his powers. Blair v. Walker, 349

N.E.2d 385, 389 (Ill. 1976) (holding that the Governor of Illinois was protected from actions for

civil defamation when making statements "which are legitimately related to matters committed

to his responsibility."); Harris v. News-Sun, 646 N.E.2d 8, 11 (Ill. App. 1995) (stating "the

proper focus of the absolute immunity inquiry is on the nature of the government official's

duties, and not on his/her rank or title.").

Defendants argue that Williams is protected by the absolute immunity doctrine even if

his alleged statements were in fact defamatory because he was at all relevant times the Chief of

Prosecution in the Real Estate Division of OBRE. Defendants also contend that the other state

officials named as Defendants are entitled to absolute immunity. The Court cannot determine on

a motion to dismiss whether Williams' alleged defamatory statements to RE/MAX and the

actions of the other defendants were within the course of their official duties. The current record

does not reveal the precise parameters of defendants' official duties. Defendants' motion to

dismiss the state law claims on the ground of absolute immunity is denied.

### 4.    Civil Conspiracy Claim

Under Illinois law, a "[c]ivil conspiracy consists of a combination of two or more persons

for the purpose of accomplishing by some concerted action either an unlawful purpose or a

lawful purpose by an unlawful means." Bilut v. Northwestern University, 692 N.E.2d 1327,

1332 (Ill. App. 1998). Defendants argue that plaintiffs fail to state a claim for civil conspiracy

under state law because as a general rule, principals and agents are incapable of conspiring with

one another. Id. The Bilut court recognized two exceptions to this general rule where: (1) the

interests of a separately incorporated agent diverge from the interests of the corporate principal

and the agent at the time of the conspiracy is acting beyond the scope of his authority or for his

own benefit, rather than that of the principal or (2) the agent is acting not as an agent but as a principal. Both of these exceptions arise from the case of <u>Pink Supply Corp. v. Hiebert, Inc.,</u> 788 F.2d 1313, 1317 (8th Cir. 1986), in which the court held that "[w]hen the interests of the principal and agents diverge, and the agents at the time of the conspiracy are acting beyond the scope of their authority or for their own benefit rather than that of the principal," they may be capable of conspiring with the principal.

Plaintiffs' allegations reasonably support a conclusion that defendants were acting beyond the scope of their authority and motivated solely by a personal interest, rather than the benefit of the OBRE. Defendants Zito and Potter were allegedly motivated by a personal desire to "get" Baloun. Plaintiffs further allege that the defendants conspired to harass, coerce, intimidate Baloun and destroy Baloun and his businesses. Plaintiffs also allege that Zito, Potter, and Williams knowingly filed and pursued false charges against Baloun. Williams allegedly interfered with Baloun's contractual relationships with RE/MAX and various real estate agents. The amended complaint also alleges that the remaining defendants knew or should have known of the unlawful acts by Zito, Potter, and Williams. These allegations met the exception to the general principal that a corporation cannot conspire with its agents, and plaintiffs' state law conspiracy claim stands.

### 5. Defamation Claim

Defendants contend that defendant Zito cannot be held liable for defamation because the only alleged defamatory statement by Zito was his announcement that plaintiffs' businesses were shut down and the amended complaint establishes the truth of this statement. Plaintiffs failed to respond to defendants' argument regarding defendant Zito. Accordingly, the Court assumes

plaintiffs have no objection to the granting of the motion to dismiss with respect to this issue and this defendant.

### 6. Tortious Interference

Defendants also summarily argue without any analysis that plaintiffs' tortious interference with a prospective economic advantage claim should be dismissed. In Illinois, a plaintiff can recover for tortious interference with business expectancy by showing: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. International Marketing Limited v. Archer-Daniels-Midland Co., Inc., 192 F.3d 724, 731 (7th Cir. 1999) (applying Illinois law). To recover for the related tort of interference with existing contractual rights, a plaintiff must show "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." Id.

Plaintiffs have stated a claim for tortious interference with business expectancy. Plaintiffs allege that they had a successful and ongoing franchise relationship with RE/MAX prior to defendants' investigation of plaintiffs' business practices. Am. Cmplt. ¶ 97. Plaintiffs further allege that Baloun's franchise agreement regarding his Lincoln Park real estate office was scheduled for renewal in July of 1999. Id. ¶ 98. According to the amended complaint, Baloun had a reasonable expectation of renewing the franchise relationship with RE/MAX. Id. Plaintiffs allege that defendants were aware of Baloun's relationship with RE/MAX. Id. ¶ 100.

Plaintiffs also allege that defendant Williams contacted RE/MAX on several occasions in March of 1999 and made defamatory statements regarding Baloun's integrity, honesty, and business practices. Id. Plaintiffs further allege that as a result of defendants summary suspension of their real estate licensees, defendants' unfounded investigation into Baloun's business practices, and Williams' alleged defamatory statements, RE/MAX began to question Baloun's integrity and Baloun was forced to sell two of his real estate offices for below market price. Id. ¶¶ 101, 106-108. These allegations sufficiently allege that defendants engaged in tortious interference with Baloun's ability to enter into a renewal of its franchise agreement with RE/MAX.

Plaintiffs also sufficiently allege tortious interference with a prospective business relationship with real estate agents. At the time of defendants' actions, Baloun was in the process of attempting to recruit additional real estate agents for his offices. Am. Cmplt. ¶ 114. Baloun alleges that he had a reasonably valid business expectancy of hiring several new agents. Id. Plaintiffs further allege that defendants knew or should have know that Baloun continuously sought additional real estate agents to generate more sales for his offices. Id. ¶ 115. Defendants' actions interfered with Baloun's prospective business relationships with new real estate agents, and Baloun was damaged in an amount equal to the lost revenues from new real estate agents which he reasonably expected to hire in the relevant time period. Id. ¶¶ 116, 119. Plaintiffs have adequately alleged a claim for tortious interference with prospective business relationships with real estate agents.

Lastly, plaintiffs' amended complaint sufficiently states a cause of action for tortious interference with contract. Baloun had contracts with various real estate agents, and defendants were allegedly aware of these contracts. Am. Cmplt. ¶¶ 109, 112. Plaintiffs allege that defendants induced the breach of these contracts by summarily suspending plaintiffs' real estate

licenses and pursing an unfounded investigation into Baloun's business practices. Id. ¶ 113. Plaintiffs allege that as a result of defendants' actions, real estate agents terminated their employment relationship with Baloun and Baloun suffered damages in an amount equal to the lost revenues of the real estate agents. Id. ¶¶ 113, 116, 118.

## III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiffs' procedural due process claim based on defendants' random and unauthorized conduct in temporarily suspending their real estate licenses is dismissed. Plaintiffs' defamation claim against defendant Zito is dismissed. Any claims against Darr and Brady under § 1983 based on actions occurring before August 31, 1999 are dismissed. Finally, any claims against defendants Williams, Turner, Shaffer, McAuliffe, Darr, and Brady based on their filing a complaint with the OBRE, petitioning for summary suspension, and failing to provided prior notice of their request for a summary suspension are barred by the doctrine of prosecutorial immunity. Defendants' motion is otherwise denied. Defendants are directed to answer plaintiffs' remaining claims within 20 days from the date of this Opinion.

This case is set for a status hearing on November 19, 2002 at 9:00 a.m. for the purpose of setting a discovery schedule.

ENTER:

Nan R. Nolan
**United States Magistrate Judge**

Dated: 10/24/02